**Maria RIVERA, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1] Commissioner of Social Security, Defendant.**

**No. CIV.A.01–643–JJF.**

United States District Court, D. Delaware.

Dec. 23, 2002.

---

1. Jo Anne Barnhart became the Commissioner of Social Security, effective November 14, 2001, to succeed Acting Commissioner Larry G. Massanari, who succeeded Commissioner Kenneth S. Apfel. Pursuant to Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Jo Anne Barnhart is automatically substituted as the defendant in this action.

414

Gary C. Linarducci, Esquire of Gary C. Linarducci, New Castle, Delaware. Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, and Patricia C. Hannigan, Esquire, Assistant United States Attorney, of the Office of the United States Attorney, Wilmington, Delaware. Of Counsel: James A. Winn, Esquire, Regional Chief Counsel, and Kelly C. Connelly, Esquire, Assistant Regional Counsel of the Social Security Administration, Philadelphia, Pennsylvania. Attorneys for Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. §§ 405(g) filed by Plaintiff, Maria Rivera, seeking review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's claim for disability insurance

benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Plaintiff has filed a Motion For Summary Judgment (D.I.7) requesting the Court to enter judgment in her favor. In response to Plaintiff's Motion, Defendant has filed a Cross–Motion For Summary Judgment (D.I.9) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross–Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 4, 1999 will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff filed her application for DIB on January 6, 1998, alleging disability since September 20, 1996 due to high blood pressure, colitis, gout, back pain and arthritis. (Tr. 105). Plaintiff's application was denied initially and on reconsideration. (Tr. 65, 67).

Plaintiff appealed the denial of her application and an administrative law judge (the "A.L.J.") conducted a hearing on Plaintiff's claim. By decision dated August 4, 1999, the A.L.J. denied Plaintiff's claim for DIB. (Tr. 7–15). Following the unfavorable decision, Plaintiff filed a timely Request For Review Of Hearing Decision. On August 21, 2001, the Appeals Council denied Plaintiff's request. (Tr. 4–5).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g), seeking review of the A.L.J.'s decision denying her claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I.4) and the Transcript (D.I.5) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment (D.I.7) and Opening Brief (D.I.8) in support of the Motion. In response, Defendant filed a Cross–Motion For Summary Judgment (D.I.9) and a combined Answering Brief and Opening Brief (D.I.10) requesting the Court to affirm the A.L.J.'s decision. Plaintiff has waived her right to file a Reply Brief (D.I.12), and therefore, this matter is ripe for the Court's review.

## II. Factual Background

### A. *Plaintiff's Medical History, Condition and Treatment*

At the time the A.L.J. issued his decision, Plaintiff was fifty-five years old. (Tr. 15, 20). Plaintiff has a general equivalency diploma (GED) and past work experience as a teacher's aide. (Tr. 21, 106). Plaintiff last worked in September 1996, when she was laid off. (Tr. 20). The record reflects that Plaintiff collected unemployment benefits for six months after her lay-off and looked for another job.

### 1. Low back pain

In 1983, Plaintiff reported to Jose D. Manalo, M.D., complaining of back pain. (Tr. 203). Dr. Manalo noted dorsal muscle tenderness and prescribed Flexeril 10 mg. two times daily.

In July 1986, Plaintiff again reported to Dr. Manalo for acute low back pain. Plaintiff denied that her pain was caused by any trauma. Dr. Manalo ordered bed rest and moist heat. Dr. Manalo also prescribed Nalfin 600 mg. two times daily.

On November 7, 1986, Plaintiff reported to Dr. Manalo with continued low back pain. Dr. Manalo noted tenderness in her low back and paralumbar region upon palpation. Dr. Manalo also noted a limited range of motion with forward bending. (Tr. 204).

Between 1987 and 1988, Dr. Manalo diagnosed Plaintiff with acute bursitis of the right shoulder. He noted tenderness of the right shoulder and prescribed Naprosyn and moist heat. (Tr. 205).

On December 9, 1993, Plaintiff returned to Dr. Manalo for a bruised right knee. Dr. Manalo diagnosed an infection of the anterior right knee with cellulitis. Dr. Manalo prescribed hot salt water soaks and Cipro 500 mg. two times daily. (Tr. 207).

On July 9, 1996, Plaintiff again reported to Dr. Manalo for left knee pain. Upon examination, Dr. Manalo noted moderate tenderness of the lateral collateral leg. (Tr. 209). Dr. Manalo noted that Plaintiff had fallen several years ago. He diagnosed Plaintiff with tendinitis of the left knee and prescribed Daypro. (Tr. 129).

On March 30, 1998, Plaintiff returned to Dr. Manalo for a follow-up appointment. At this appointment, Plaintiff continued to complain of back pain. Dr. Manalo noted a decreased range of motion in the lumbosacral spine. An x-ray of Plaintiff revealed degenerative joint disease of her lumbosacral spine. Dr. Manalo diagnosed Plaintiff with chronic low back pain. (Tr. 127).

On May 24, 1998, Plaintiff was involved in an automobile accident. (Tr. 193). Plaintiff reported to the emergency room two days later for back and neck pain. A physical examination of Plaintiff revealed cervical spine spasm and left trapezius spasm, and thoracic and lumbosacral pain with any type of extension. X-rays of Plaintiff showed degenerative changes of the cervical spine and small degenerative spurs of the lumbar spine, but no fractures. Plaintiff was prescribed Cataflam and released. (Tr. 196).

On June 16, 1998, Plaintiff returned to Dr. Manalo complaining of back pain. Dr.

Manalo noted tenderness in Plaintiff's cervical and lumbosacral spine regions. However, Dr. Manalo also reported that Plaintiff had full range of motion and normal straight leg-raising. (Tr. 199). Dr. Manalo prescribed Sular, Atenolol, and Dicyclomine, and instructed Plaintiff to continue taking her pain medication as needed. Dr. Manalo also requested Plaintiff to make a follow-up appointment following physical therapy sessions two times weekly for three weeks.

On June 22, 1998, Plaintiff underwent an initial physical therapy evaluation at Dynamic Physical Therapy. (Tr. 173–176). Plaintiff reported headache, neck and back stiffness with pain, increase in blood pressure, constant low back pain, increased pain with attempts to lift laundry baskets, grocery bags or do household chores, and increased symptoms with bending, standing and prolonged sitting. (Tr. 173). Plaintiff had limited lumbar cervical range of motion and strength. (Tr. 174–175). Plaintiff participated in weekly physical therapy with slow improvement. (Tr. 177–192).

On August 11, 1998, Plaintiff reported to Dr. Manalo. Plaintiff had limited lumbar range of motion and slightly positive straight leg-raising on the right. (Tr. 200). Dr. Manalo injected Plaintiff's left trapezius with Lidocaine and Depomidrol 20 mg., and recommended continued physical therapy. (Tr. 200).

On September 1, 1998, Plaintiff reported to Dr. Manalo with improved range of motion. Dr. Manalo performed a second injection and recommended continued physical therapy and stretching exercises. (Tr. 200). Plaintiff continued with physical therapy, and her lumbar and cervical range of motion and strength continued to improve. (Tr. 286–287). Plaintiff occasionally experienced muscle tension and stiffness. By October 27, 1998, Plaintiff had a normal cervical range of motion, cervical strength of four-plus out of five, improved lumbar range of motion and lumbar strength of four to four-plus out of five. Plaintiff was subsequently discharged from physical therapy. (Tr. 201).

On November 25, 1998, Plaintiff reported to Dr. Manalo with back pain. However, Plaintiff refused medication due to stomach problems. (Tr. 202). Dr. Manalo noted a tender right trapezius and tender right paralumbar and diagnosed Plaintiff with a recurring sprain. Dr. Manalo referred Plaintiff to a chiropractor. (Tr. 202).

Plaintiff participated in chiropractic treatment from December 1998 through March 1999 at Back Care Plus. (Tr. 223–242, 252–256, 275–276). During this time, Plaintiff was treated with massage, manual traction, joint and muscle mobilization, and other therapeutic activities. (Tr. 218). In addition, Plaintiff continued to report to Dr. Manalo complaining of back pain.

On February 15, 1999, Plaintiff underwent an orthopedic evaluation with David K. Saland, M.D., an orthopedic surgeon, in connection with her May 24, 1998 auto accident. (Tr. 213–214). An examination of Plaintiff revealed slightly diminished motion of the cervical spine, no muscle spasm or tenderness, and normal strength, sensation and reflexes. (Tr. 213–214). Plaintiff was able to bend forward to sixty out of ninety degrees and squat halfway. (Tr. 214). Plaintiff was also able to walk on her heels and toes and had a normal gait and normal straight leg-raising. (Tr. 213–214). Based on his examination and findings, Dr. Saland opined that Plaintiff was capable of resuming her past work as a teacher's aide without any limitations or restrictions. (Tr. 215).

2. Hypertension

On April 20, 1991, Plaintiff reported to Dr. Manalo that she experienced chest

pain. Dr. Manalo reported that her blood pressure was 160/90. Dr. Manalo prescribed Xanax .25 mg, PRN and ordered a stress test. (Tr. 206).

On September 7, 1997, Plaintiff reported to St. Francis Hospital Emergency Room complaining that she could not sleep due to heart palpitations and high blood pressure. She was prescribed Tenormin 25 mg. and discharged.

On September 19, 1997, Plaintiff reported to Dr. Manalo who noted her emergency room visit. During this visit, Plaintiff's blood pressure was 154/92, indicative of mild hypertension. Dr. Manalo prescribed Atenolol and Trazac. (Tr. 128).

On November 18, 1997, Plaintiff was again seen by Dr. Manalo. At this visit, her blood pressure was 150/90, again indicative of mild hypertension. (Tr. 128).

### 3. Colitis

On September 21, 1990, Dr. Manalo noted that Plaintiff had been to his office one year previously for colitis and bleeding from the rectum. (Tr. 206). The next pertinent medical record entry for this condition is Plaintiff's visit to the St. Francis Hospital Emergency Room on April 5, 1999 for abdominal pain with rectal bleeding. (Tr. 302). During this visit, Plaintiff denied palpitations and reported taking Atenolol and Sular. (Tr. 302). Her blood pressure was mildly hypertensive. A neurological examination of Plaintiff was normal. Robert J. Brus, D.O., indicated that Plaintiffs symptoms may be related to diverticulitis and an iron deficiency. Plaintiff was diagnosed with lower gastrointestinal bleed, diverticulitis, anemia, and hypertension. Plaintiff was prescribed Cipro, Prilosec and iron sulfate, and was discharged.

### 4. State Agency Physicians

On February 6, 1998, Plaintiff was examined by Irwin L. Lifrak, M.D. at the request of the Delaware Disability Determination Service. Plaintiff had a minimal limp favoring her right leg and was unable to walk on her heels or toes. (Tr. 150). She was able to perform activities requiring dexterity and had a grip strength of five out of five bilaterally. (Tr. 150–151). Plaintiff had normal motor strength, no muscle atrophy and intact reflexes and sensation. Plaintiff had a somewhat limited lateral flexion, but otherwise essentially normal range of motion. (Tr. 153–154).

On February 10, 1998, Plaintiff's medical records were reviewed by Vinod Keterie, M.D., a state agency physician. Dr. Keterie completed a residual functional capacity ("RFC") assessment. (Tr. 155–162). Dr. Keterie opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently and sit, stand and walk six hours per day. Dr. Keterie further opined that Plaintiff had no additional limitations. (Tr. 156–162).

A second RFC assessment was completed by another state agency physician on May 18, 1998. Although the name of this physician is illegible, the physician opined that Plaintiff could lift 50 pounds occasionally and twenty-five pounds frequently and sit, stand and walk six hours in an eight hour day. (Tr. 163–170). The reviewing physician's additional comments state that Plaintiff has an RFC for medium work.

### B. *The A.L.J.'s Decision*

On April 29, 1999, the A.L.J. conducted a hearing on Plaintiff's DIB claim. At the hearing, Plaintiff testified that she previously worked as a teacher's aide. Plaintiff testified that she could not work because of her back pain, blood pressure and colitis. Plaintiff testified that she has to lift cots for the children which weigh about 4

pounds each. (Tr. 38). Plaintiff also initially testified that she was not required to pick up children as part of her job, but later stated that she was expected to lift children. (Tr. 22, 35). Plaintiff also testified that she was able to sit for a while and then walk around for a while at her job to relieve back pain.

In his decision dated August 4, 1999, the A.L.J. concluded that Plaintiff's back condition, colitis and hypertension were severe impairments, but that they did not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. The A.L.J. also found that Plaintiff's statements concerning the nature and severity of her symptoms were not fully credible. The A.L.J. found that Plaintiff had an RFC for the full range of medium work, reduced by the need to alternate sitting, standing and walking. Given her RFC, the A.L.J. concluded that Plaintiff was able to perform her past relevant work as a teacher's aide, and therefore, Plaintiff was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

■ Pursuant to 42 U.S.C. § 405(g), findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. *Monsour Medical Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *Id.* In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. *Id.* at 1190–91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 555, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

■ With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. *Id.; Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981).

## DISCUSSION

### I. Evaluation Of Social Security Disability Claims

Within the meaning of social security law, a "disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment." 20 C.F.R. § 404.1505(a). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." *Id.* The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. § 404.1520. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. *Id.* at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. *Id.*

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. *Id.* The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. *Id.*

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. *Id.* In making this determination, the A.L.J. must show that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. *Id.* In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. It is at this step, that the A.L.J. may seek the assistance of a vocational expert. *Id.* at 428.

## II. Plaintiff's Contentions Of Error

By her Motion, Plaintiff challenges the findings of the A.L.J. at step four of the sequential analysis. Specifically, Plaintiff contends that the A.L.J. erred in failing to seek the testimony of a vocational expert before concluding that (1) Plaintiff had the RFC to perform the full range of medium work, reduced by her need to alternate sitting, standing and walking, and (2) Plaintiff had the RFC to perform the full range of medium work, despite the limitations imposed by her "severe" impairments.

Step four of the sequential evaluation requires the A.L.J. to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. The burden of establishing that he or she cannot return to her past relevant work rests on the claimant. Elaborating on step four, the Social Security Administration has explained that there are three possible tests for determining whether a claimant retains the capacity to perform his or her past relevant work: (1) "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job," (2) "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties particular to an individual job as he or she actually performs it," and (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily

required by employers throughout the national economy." Social Security Ruling ("SSR") 82–61 (1982).

■ In this case, the A.L.J. utilized the second test in making his determination that Plaintiff could perform her past relevant work as a teacher's aide. Specifically, the A.L.J. relied on Plaintiff's own testimony about the functional demands of her past work. Plaintiff testified that her past work required her to lift up to 25 pounds occasionally and ten pounds more frequently and permitted her to sit and stand alternately during the day. Plaintiff's description of her job is consistent with the A.L.J.'s finding that Plaintiff could perform the full range of medium work, reduced only by her need to alternate sitting, standing and walking. Because Plaintiff retained the capacity to perform her past relevant work as she actually performed it, the A.L.J. correctly concluded that Plaintiff was not disabled. SSR 82–61 ("[W]here the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found 'not disabled.' ").

■ Plaintiff contends that the A.L.J. erred because he did not seek the testimony of a vocational expert. The testimony of a vocational expert, however, is not required in every case. Where there is other sufficient evidence to support the A.L.J.'s conclusion that a claimant is able to perform past relevant work, the testimony of a vocational expert is not needed. 3 Social Security Law & Practice § 43:4.

In this case, the A.L.J.'s assessment that Plaintiff could perform medium work with the ability to alternate sitting and standing was supported by the only two functional capacity assessments of record. (Tr. 163–170, 155–162). The state agency physicians reviewed the medical evidence

of record and opined that Plaintiff could perform the full range of medium work. The A.L.J. was entitled to rely on these opinions. 20 C.F.R. § 404.1527(f)(2) (2001). The A.L.J.'s assessment was also supported by Dr. Saland, an orthopedic surgeon who examined Plaintiff and opined that she could return to her past work as a teacher's aide without limitation. Further, there were no medical opinions of record which contradicted the state agency physicians' opinions or the opinion of Dr. Saland. In addition, the A.L.J. relied on Plaintiff's own description of her past work. Accordingly, the Court concludes that the A.L.J.'s findings at step four were supported by substantial other evidence such that the testimony of a vocational expert was not needed.

To the extent that Plaintiff suggests that a vocational expert should have been consulted to assess Plaintiff's RFC, the Court disagrees. It is the duty of the A.L.J. as the trier of fact to determine the claimant's RFC. 20 C.F.R. § 404.1527(e). Vocational experts are not consulted for their medical expertise and are not charged with determining a Plaintiff's RFC based on the medical evidence in the record. *See e.g. Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 247 (6th Cir. 1987).

Plaintiff also suggests that a vocational expert was needed to differentiate between the two different classifications of "teacher's aide" in the Dictionary of Occupational Titles ("DOT"). Use of the DOT at step four, however, is consistent with the third test for determining whether a claimant can return to his or her past relevant work, i.e. whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. In this context, the DOT "can be relied upon—for jobs that

are listed in the DOT—to define the job as it is usually performed in the national economy." SSR 82–61. Use of the DOT, and vocational expert testimony about the DOT, is not required where the A.L.J. determines that the claimant could return to his or her past work as he or she actually performed it.[2] SSR 82–61.

Further, the Commissioner did not bear the burden of proof at step four of the sequential analysis, and for this additional reason, the A.L.J. was not required to take the testimony of a vocational expert. The A.L.J. was not required to prove the existence of other work in the national economy (i.e. step five of the sequential analysis). Rather, at step four, the Plaintiff bore the burden of establishing that she could not return to her past relevant work. *See e.g.* 20 C.F.R. § 404.1566; *Banks v. Massanari,* 258 F.3d 820 (8th Cir.2001) (holding that vocational expert testimony is not required until step five of the sequential analysis). Thus, the Court concludes that the A.L.J. was not required to seek the opinion of a vocational expert.[3] *See Bowen v. Sullivan,* 976 F.2d 740, 1992 WL 236885, *4 (10th Cir.1992) (holding that A.L.J. was not required to seek testimony of vocational expert at step four, because burden only shifts to Commissioner when claimant establishes that he or she has a disability which prevents him

from performing his or her past relevant work); *Mullin v. Apfel,* 79 F.Supp.2d 544, 549 (E.D.Pa.2000), *aff'd* 254 F.3d 1078 (3d Cir.2001).

In sum, the Court concludes that the A.L.J. did not err in failing to seek the testimony of a vocational expert. Further, the Court concludes that the A.L.J.'s decision that Plaintiff is *not* disabled is supported by substantial evidence. Accordingly, the Court will affirm the decision of the Commissioner dated August 4, 1999.

## CONCLUSION

For the reasons discussed, Defendant's Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 4, 1999 will be affirmed.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this 23rd day of December 2002, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant's Cross–Motion For Summary Judgment (D.I.9) is GRANTED.

---

2. Further, the DOT listings which Plaintiff relies upon to support her argument are considered "light work" and involve activities that would necessitate alternating positions. The A.L.J. concluded that Plaintiff could perform medium work reduced by the alternate need to change positions. Thus, the listings upon which Plaintiff relies are also consistent with the A.L.J.'s RFC, and as a result, they also support the A.L.J.'s conclusion that Plaintiff could return to her past work as a teacher's aide. *See* 20 C.F.R. § 404.1567(c) (2001) (providing that an individual who can perform medium work can also perform light work).

3. Although vocational expert testimony is not needed at step four of the sequential analysis, it may be considered when the A.L.J. is determining whether the claimant is capable of performing past relevant work as it is performed in the national economy. *Townsend v. Chater,* 91 F.3d 160, 1996 WL 366207, *3(10th Cir.1996). The consideration of how past relevant work is performed in the national economy is the third test for step four of the sequential analysis. As explained above, however, the A.L.J. utilized the second test in his step four determination; i.e. how the claimant actually performed her past relevant work.

2.  Plaintiff's Motion For Summary Judgment (D.I.7) is DENIED.

3.  The final decision of the Commissioner dated August 4, 1999 is AFFIRMED.

---

1.  Jo Anne Barnhart became the Commissioner of Social Security, effective November 14, 2001, to succeed Acting Commissioner Larry G. Massanari, who succeeded Commissioner Kenneth S. Apfel. Pursuant to Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Jo Anne Barnhart is automatically substituted as the defendant in this action.