**Pedro J. SANCHEZ, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant.**

**No. CIV.A. 04–286–JJF.**

United States District Court,
D. Delaware.

Sept. 16, 2005.

---

33.  438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

34.  *Id.* at 171–72, 98 S.Ct. 2674.

35.  *Id.*

Steven L. Butler, Law Office of Gary Linarducci, New Castle, DE, for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, of the Office of the United States Attorney, Wilmington, DE, Of Counsel: David F. Chermol, Esquire, Special Assistant United States Attorney for the District of Delaware, and Donna L. Calvert, Esquire of the Office of the General Counsel of the Social Security Administration, Philadelphia, Pennsylvania. Attorneys for Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Pedro J. Sanchez, seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Titles II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433. Plaintiff has filed a Motion For Summary Judgment (D.I.12) requesting the Court to enter judgment in Plaintiff's favor and reverse or remand the decision of the Commissioner. In response to Plaintiff's Motion, Defendant has filed a Cross–Motion For Summary Judgment (D.I.16) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross–Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated April 22, 2003, will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff filed an application for DIB on June 27, 1997, alleging disability since June 4, 1997, primarily due to asthma and back pain. Plaintiff's application was denied initially and upon reconsideration. (Tr. 49–52, 55–58). Plaintiff filed a timely request for an administrative hearing, and the A.L.J. held a hearing on August 27,

1998. (Tr. 24–51). On January 13, 1999, the A.L.J. issued a decision denying Plaintiff's claim for DIB. The Commissioner requested a voluntary remand of this matter, because a vocational expert did not testify at the hearing. (Tr. 246–249). The Honorable Gregory M. Sleet granted the motion to remand, and a second hearing was held before the A.L.J. on April 4, 2003.

During the second hearing, Plaintiff was represented by counsel and a vocational expert testified. Following the hearing, the A.L.J. issued a decision dated April 22, 2003, denying Plaintiff's claim. (Tr. 213–219). Plaintiff filed an appeal, and the Appeal's Council denied review. (Tr. 198–206). Accordingly, the A.L.J.'s April 22, 2003 decision became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I.7) and the Transcript (D.I.8) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief (D.I.12, 13) in support of the Motion. In response, Defendant filed a Cross–Motion For Summary Judgment and a combined Opening and Answering Brief (D.I.16, 17) requesting the Court to affirm the A.L.J.'s decision. Plaintiff waived his right to file a Reply Brief (D.I.18), and therefore, this matter is fully briefed and ripe for the Court's review.

## II.   Factual Background

### A.   *Plaintiff's Medical History, Condition and Treatment*

At the time of the A.L.J.'s second hearing in this case, Plaintiff was sixty-one years old. (Tr. 227). Plaintiff attended school in Puerto Rico and attained a ninth grade education. (Tr. 228). Although Plaintiff is able to speak English, he contends that he has a limited ability to read and write in English. (Tr. 26–27). However, Plaintiff testified that he can understand what he is buying in the grocery store and that he has some ability to read the newspaper. Plaintiff's past relevant work included employment as a custodian for the University of Delaware. (Tr. 214). Plaintiff receives a disability retirement pension from the University of Delaware. (Tr. 28, 39). Plaintiff's last date insured for DIB was December 31, 2002.

Plaintiff has a history of asthma with his asthma being linked to his exposure to polish and other cleaning chemicals used during his employment as a custodian. Plaintiff has been treated by Jeffrey Kerner, D.O., his primary care doctor, Anthony Vasile, D.O., a board certified pulmonary specialist and Mark Haegele, D.O. (Tr. 215–216). Plaintiff uses an asthma inhaler two to three times per day and acknowledges that the inhaler relieves his symptoms. Plaintiff treated with Dr. Vasile for slightly over one year from September 1993 to October 1994. Medical records from 1994 indicate that Plaintiff had asthma, but that his asthma was under control with medication. (Tr. 134–142). After an absence of almost three years, Plaintiff returned to Dr. Vasile in May 1997. Dr. Vasile's notes indicate that Plaintiff had not been hospitalized and did not seek treatment for any asthma symptoms for nearly three years, but that Plaintiff returned to Dr. Vasile to be evaluated in connection with his pursuit of retirement disability benefits. Dr. Vasile acknowledged that Plaintiff did suffer respiratory difficulties which were exacerbated by his employment as a custodian. Dr. Vasile also noted that Plaintiff missed a fair amount of time at work, but wrote

that he would need to have that missed time quantified. Dr. Vasile also noted that he was "not clear if he is in fact disabled since he is able to work and has not been in the emergency room or hospitalized for asthma." (Tr. 132). Diagnostic testing of Plaintiff's breathing at this time yielded normal results. (Tr. 143–144). Nevertheless, Dr. Vasile completed a disability form for Plaintiff to receive disability retirement benefits. (Tr. 161–162).

Plaintiff also treated with his family doctor, Dr. Kerner, in May 1997 in connection with his pursuit of disability retirement benefits. Dr. Kerner completed a two page Attending Physician Statement indicating that Plaintiff could no longer perform the requirements of his job due to ongoing episodes of shortness of breath and exposure to polishes, waxes and other chemicals. Dr. Kerner noted that Plaintiff had to avoid exposure to chemicals and wrote that Plaintiff could only work 2–3 hours in a sedentary capacity. Dr. Kerner also checked the box that Plaintiff was incapable of minimal sedentary activity; however, Dr. Kerner opined that Plaintiff could walk 1 hour in an 8 hour day, sit for 8 hours in an 8 hour day, stand for 2 hours in an 8 hour day and bend for 1 hour in an 8 hour day. Dr. Kerner also noted that Plaintiff could not work in his regular occupation, but checked that he was able to work in "some occupations." (Tr. 153). Although Plaintiff last treated with Dr. Kerner in July 1998, Dr. Kerner completed a Residual Functional Capacity Evaluation for Plaintiff in January 2003. In this form, Dr. Kerner attributed Plaintiff's inability to work to ongoing episodes of back pain. In April 2003, Dr. Kerner also provided a letter addressed "To whom it may concern" stating that Plaintiff stopped working due to exposure to chemicals which caused him wheezing and shortness of breath. Dr. Kerner stated that Plaintiff has continued sensitivity to environmental chemicals and that it was his opinion that "he has a degree of permanent damage to his pulmonary tissue." (Tr. 313).

Plaintiff underwent a consultative physical examination in October 1997. The consultative examiner noted mild wheezing on expiration and no sign of rales or rhonchi (Tr. 165). No back pain was noted and no diagnosis was made with respect to back pain.

In June 2001, Plaintiff underwent a diagnostic study of his chest. The results of this study were normal. (Tr. 291). There are no medical records that Plaintiff was hospitalized or received emergency treatment for asthma during the relevant time. Plaintiff also did not treat with any specialists for back pain.

Two residual functional capacity assessments were completed by state agency physicians for Plaintiff in 1997 and 1998. Both state agency physicians opined that Plaintiff could perform a range of medium work activity that did not involve exposure to breathing irritants. (Tr. 171–178, 179–186). The doctor completing the 1997 assessment stated that Plaintiff suffers from "intermittent asthma which is largely brought on by his job. However, his pulmonary function studies are essentially normal." (Tr. 178).

B.  *The A.L.J.'s Decision*

On April 4, 2003, the A.L.J. conducted a hearing on Plaintiff's application for DIB. At the hearing, Plaintiff was represented by counsel. In addition to Plaintiff, a vocational expert testified. In questioning the vocational expert, the A.L.J. assumed that Plaintiff could not go back to his past relevant work as a custodian. The A.L.J. then asked the vocational expert to consider a hypothetical individual with the same vocational profile as Plaintiff and who could perform work at the medium exertional level, but would have to avoid con-

centrated exposures to dust, fumes, smoke, chemicals and the like. The vocational expert responded that such a hypothetical individual could perform work as a packer and a stock clerk.

In his decision dated April 22, 2003, the A.L.J. found that Plaintiff suffered from asthma which is a "severe" impairment, but that the condition did not meet or equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P. app. 1 (2003). (Tr. 22). The A.L.J. further found that Plaintiff retained the residual functional capacity for work medium work, but that he must avoid concentrated exposure to dust, smoke, fumes and the like. Using the Medical Vocation Rules as a framework, the A.L.J. concluded that a significant number of jobs existed in the national economy that Plaintiff could perform, including the job of packer, with 7,000 jobs regionally and more than 100,000 jobs nationally, and stock clerk, with 9,500 jobs regionally and more than 100,000 jobs nationally. Thus, the A.L.J. concluded that Plaintiff was not disabled within the meaning of the Act.

## STANDARD OF REVIEW

■ Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.1986). In making this determination, a reviewing court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *Id.* In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. *Id.* at 1190–91.

■ The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 555, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

■ With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. *Id.; Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981).

## DISCUSSION

### I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity

which exists in the national economy." 20 C.F.R. §§ 404.1505. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir.1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a); *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. *Id.* at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. *Id.*

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. *Id.* The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. *Id.*

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. *Id.* Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. *Id.* In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. *Id.* at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s determination that Plaintiff was capable of performing medium work that existed in significant numbers in the national economy was not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. erred in accepting the opinions of non-examining state agency physicians and rejecting the opinions of Plaintiff's treating physicians, Drs. Kerner and Vasile.

An A.L.J. may reject the opinion of a treating physician if the opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.2001). If the A.L.J. rejects the opinion of a treating physician, he or she must adequately explain the reasons for doing so on the record. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993). If a treating physician's opinion is rejected, the A.L.J. must consider such factors as the length of the treatment relationship, the nature and ex-

tent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician and other factors the plaintiff raises, in determining how to weigh the physician's opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

■ In this case, the A.L.J. considered the opinions of Drs. Kerner and Vasile, but gave them little probative weight. In so doing, the A.L.J. observed that the opinions of these physicians were unsupported by the medical evidence of record. Specifically, the A.L.J. noted that Plaintiff's pulmonary functions studies were normal, and that Plaintiff had not had any further studies done since 1997. The A.L.J. also noted that no objective medical evidence supported Dr. Kerner's opinion of disability due to ongoing back pain, because the record contained no diagnosis regarding back pain, no diagnostic tests were conducted related to back pain, and no specific medications were prescribed for back pain. Indeed, Dr. Kerner cited no objective tests to support his assessments. (Tr. 304). The A.L.J. also observed that Dr. Kerner's opinions were internally inconsistent. For example, in his 1998 Attending Physician statement, Dr. Kerner opined that Plaintiff could only perform 2–3 hours of sedentary work, but that Plaintiff could sit for 8 hours in an 8 hour day and Plaintiff could perform "some occupations." (Tr. 153). In the Residual Functional Capacity Evaluation completed by Dr. Kerner in January 2003, Dr. Kerner wrote that Plaintiff could sit 3 hours in an 8 hour day with breaks to sit and stand, but then wrote

that Plaintiff could work with a sit/stand option 6–8 hours per day. (Tr. 303). With respect to Dr. Vasile, the A.L.J. specifically noted that when Dr. Vasile evaluated Plaintiff for disability retirement benefits, he had not treated Plaintiff for a period of three years.[1] Because the opinions of Plaintiff's treating physicians were contradicted by the medical evidence of record and the A.L.J. adequately explained his reasons for rejecting those opinions, the Court concludes that the A.L.J.'s decision was not erroneous.

■ The Court further concludes that the decision of the A.L.J. that Plaintiff was not disabled is supported by substantial evidence. There is no medical evidence of any hospitalizations or emergency room visits by Plaintiff for asthma or back pain. Two state agency physicians rendered opinions that Plaintiff could perform work in the medium exertional range. These opinions were consistent with the medical evidence in the record, including treatment notes that Plaintiff's asthma was under control with an inhaler and diagnostic studies which showed no abnormalities. Thus, the A.L.J. was entitled to credit the opinions of the state agency physicians in assessing Plaintiff's residual functional capacity.[2] See Jones v. Sullivan, 954 F.2d 125, 128–129 (3d Cir.1991) (recognizing that a non-examining physician can provide substantial evidence to support the A.L.J.'s decision); Rivera v. Barnhart, 239 F.Supp.2d 413, 420 (D.Del.2002) (recognizing that A.L.J. could rely on state agency physician opinions where they were consis-

1. With respect to Dr. Vasile, the Court also notes that Dr. Vasile indicate that Plaintiff's asthma was under control during the one-year period that Plaintiff treated with him. (Tr. 134–142). Three years later when Dr. Vasile offered his opinion for the purposes of helping Plaintiff obtain retirement benefits, Dr. Vasile expressed that he was uncertain if Plaintiff was disabled, because "his is able to

work and has not been in the emergency room or hospitalized for asthma." (Tr. 132).

2. Alexander v. Shalala, 927 F.Supp. 785, 795 (D.N.J.1995) (recognizing that opinions of non-examining physicians can override the opinion of a treating source if those opinions are supported by evidence in the record).

tent with other evidence in the record). The A.L.J. then conferred with the vocational expert who provided unrebutted testimony that a significant number of jobs were available in the national and regional economies which Plaintiff could perform. Accordingly, the Court concludes that the A.L.J. did not err in concluding that Plaintiff was not disabled within the meaning of the Act.

## CONCLUSION

For the reasons discussed, Defendant's Cross–Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated April 22, 2003 will be affirmed.

An appropriate Order will be entered.

### *ORDER*

At Wilmington, this 16 day of September 2005, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant's Cross–Motion For Summary Judgment (D.I.16) is *GRANTED.*

2. Plaintiff's Motion For Summary Judgment (D.I.12) is *DENIED.*

3. The final decision of the Commissioner dated April 22, 2003 is *AFFIRMED.*